# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

RODNEY E. BOWDEN, )
)
          Plaintiff, )
)
v. ) Case No. CIV-16-231-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
          Defendant. )

## OPINION AND ORDER

The claimant Rodney E. Bowden requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 12, 1966, and was forty-eight years old at the time of the administrative hearing (Tr. 34, 117). He completed the eleventh grade while attending special education classes, and has worked as a construction laborer (Tr. 23, 133). The claimant alleges that he has been unable to work since May 16, 2011, due to deep depression and back problems (Tr. 133).

## Procedural History

On May 16, 2011, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ J. Frederick Gatzke held an administrative hearing and determined the claimant was not disabled in a written opinion dated June 6, 2014 (Tr. 11-25). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that the claimant had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that he was precluded from work around dangerous moving machinery. Furthermore, the ALJ determined that the claimant must avoid work that

requires no more than occasional collaboration with co-workers with only superficial contact with the public and simple one to two step job instructions (Tr. 17). The ALJ found that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work that he was capable of performing, *i. e.*, janitor, hand packer, and assembler (Tr. 23-24).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly assess his impairments with regard to the Listings, particularly as to Listing 12.05C in the Medical-Vocational Guidelines, and (ii) by failing to properly consider the evidence regarding his mental impairments. The undersigned Magistrate Judge finds that the ALJ *did* fail to properly determine whether the claimant satisfied the criteria of Listing 12.05C, and the decision of the Commissioner should therefore be reversed.

The claimant reported in his application that he completed the eleventh grade and attended special education classes (Tr. 133). Additionally, the claimant testified at the administrative hearing that he was in special education classes while in school, and that he did not have a driver's license because he struggled with comprehension on the exam (Tr. 45).

The claimant was largely treated through the Choctaw Nation (Tr. 321-349, 368-400) and his treating physician, Dr. Ryan Magnus, prepared a number of statements regarding the claimant's ability to work between June 2011 and June 2012 (Tr. 316-319). On each form, he indicated that the claimant's impairments included major depressive disorder, moderate, as well as impulse control disorder NOS, which affected him because

his anger and depression impaired his ability to work and be around people (Tr. 316-319). He indicated at first that he was unsure how long the claimant would be incapacitated and that the claimant reported he could not work, then indicated that the claimant could perform sedentary work in October 2011, but then indicated that he had no work tolerance by June 2012 (Tr. 316-319). On February 27, 2014, Dr. Magnus completed another assessment indicating that the claimant had a mood disorder, that anxiety and depression prohibited him from working at this time, and that he had no work tolerance (Tr. 402).

On November 17, 2011, Betty J. Feir, Ph.D. conducted a psychological evaluation of the claimant, and also administered the WAIS-IV test for intellectual assessment (Tr. 278). She stated that he appeared to have good testing motivation and maintained his interest, and that he was cooperative and the results appeared valid (Tr. 278). The claimant obtained a Verbal Comprehension score of 63, a Perceptual Reasoning score of 75, a Working Memory score of 66, and a Processing Speed score of 62, with a Full Scale IQ score of 65 (Tr. 279). Dr. Feir thus found the claimant had borderline intellectual functioning (Tr. 279). Dr. Feir then stated that she believed his IQ was an underestimation because:

> His lesser verbal based ability summary score approaches a clinically significant difference from his sensory abilities that are in the borderline classification; thus, borderline ability may represent his premorbid and/or current capability intellectually. Records with the referral indicated from his report he had depression and back problem. He does appear to be functioning with ability that is subaverage and affected from difficulties with his perceived depressed mood that records suggested. He was originally requested to have a mental status examination that was inadvertently admitted. He does appear to have a very slow rate of learning

and limited memory and would have difficulty with managing finances with the current ability findings. Additional referral or re-referral could be helpful if the current findings and any school or other records are not available for his case.

(Tr. 279).

On April 18, 2012, Dr. Theresa Horton conducted a mental status examination of the claimant (Tr. 288). Dr. Horton noted that the claimant appeared to have a limited fund of information and functioned in the range of borderline intelligence, "likely in the range of 75-85" (Tr. 291). She assessed him with bipolar disorder, type I, current episode depressed but historically and predominantly mixed, as well as generalized anxiety disorder and learning disorder NOS, along with borderline intellectual functioning (Tr. 291). She stated that the claimant appeared capable of understanding, remembering, and managing simple and somewhat more complex instructions and tasks, though he likely required close training and supervision on tasks as they became more complex; that he likely had difficulty with management of tasks as they became more complex due to frustration; and that he did *not* appear capable of sustaining employment over long periods of time as supported by his erratic employment history (Tr. 291). Finally, noting the claimant's history of alcohol abuse in relation to problems with anger management, she nonetheless stated that the claimant appeared to present with manic type symptoms including grandiose and irrational thoughts by history in addition to insomnia, all of which contributed to problems on the job in the past (Tr. 291).

As to the state reviewing physician process, state reviewing physician Kathleen Gerrity originally found that the claimant met Listing 12.04 because his functional

impairment reached the listing level (Tr. 254-266). She then updated the case analysis, noting that they had all they needed regarding the claimant's intellectual functioning, including the Full Scale IQ score of 65, but that they needed more information on other impairments, specifically depression, to assess whether the claimant met Listing 12.05C (Tr. 283). In May 2012, Dr. Gerrity conducted another review of the record and found that the claimant did not meet a listing but that he had moderate limitations in the three areas of functional limitation (Tr. 300-312). She completed a mental RFC assessment finding the claimant markedly limited in the three typical areas of understanding and remembering detailed instructions, carrying out detailed instructions, and interacting appropriately with the general public (Tr. 296-297). She also found that the claimant was moderately limited in seven other areas, including the ability to make simple work-related decisions, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and the ability to set realistic goals or make plans independently of others (Tr. 296-297). She then concluded that the claimant could perform simple tasks with supportive routine supervision and interact appropriately with a small number of co-workers and with a supervisor for superficial work purposes, that he could not sustain interaction with the general public, but that he could adapt to a work environment (Tr. 298).

In his written opinion, the ALJ determined at step two that the claimant had the severe impairments of seizure disorder, obesity, depression, anxiety, and borderline intellectual functioning (Tr. 13). At step three, he assessed whether the claimant met Listings 11.02, 12.02, 12.04, 12.06, and 12.09, but *not* 12.05, and ultimately concluded

that he did not meet at Listing. (Tr. 13-16). At step four, the ALJ summarized the claimant's hearing testimony as well as much of the medical evidence. He summarized Dr. Feir's assessment, noting the Full Scale IQ score only, and qualifying it by stating that Dr. Feir placed his with borderline sensory processing and that she believed his IQ was an underestimation based on the difference between his verbal ability and sensory ability scores (Tr. 19). He also noted Dr. Horton's assessment, focusing on her statement that the claimant's thought processes were logical, organized, and goal directed, and that he maintained "normal memory and concentration abilities" (Tr. 20). He gave great weight to Dr. Gerrity's more recent reviewing assessment of the claimant's RFC, finding that it reflected the most updated evidence available at the time of her review (Tr. 21). He further assigned significant weight to Dr. Horton's assessment, finding that it was supported by her exam with regard to the claimant's thought processes, memory, and concentration. As to Dr. Magnus's numerous opinions, the ALJ assigned them little weight, finding them to be conclusory and stating that they were based primarily on the claimant's subjective allegations (Tr. 23). He assigned no weight to and made no findings with regard to Dr. Feir's assessment (Tr. 19).

Although the claimant bears the burden of proof at step three to establish that he meets or equals the requirements for a listed impairment, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)

[quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why claimant was not disabled at step three. *Id*. at 1009, *citing Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986).

In this case at step three, the ALJ made no findings with regard to Listing 12.05C, despite evidence in the record that this specific Listing might be applicable. In order to satisfy section 12.05C to establish intellectual disability at the time of the ALJ's opinion, the claimant must first satisfy the diagnostic description included in the introductory paragraph which requires that the claimant possess "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i. e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05 (Effective February 26, 2014 to December 8, 2014). This initial requirement is referred to as the "capsule definition." *Peck v. Barnhart*, 214 Fed. Appx. 730, 736 (10th Cir. 2006) [unpublished opinion]. In addition to satisfying the capsule definition, the claimant must also satisfy two additional prongs in order to meet the requirements of Listing 12.05C: "a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05C (emphasis added).

As to the capsule definition applicable to the entirety of Listing 12.05, the ALJ's opinion wholly failed to discuss whether the claimant satisfied the capsule definition. In spite of the claimant's written application statement and hearing testimony that he was in the special education program, the Commissioner continues to argue that the claimant's

self-reports are insufficient evidence to support a finding of onset prior to age 22. However, "a claimant 'is not required to affirmatively prove that he [had an intellectual disability] prior to reaching the age of twenty two so long as there was no evidence that the claimant's IQ had changed.'" *Johnson v. Colvin*, 2016 WL 7176655, at *5-6 (W.D. Okla. Dec. 8, 2016), *quoting McKown v. Shalala*, 5 F.3d 546, 1993 WL 335788 at *3 (10th Cir. Aug. 26, 1993) (unpublished table opinion). "As one of our sister courts has found, an IQ score within the range in the regulation 'is itself some evidence of mental retardation before age twenty-two." *Young v. Colvin*, 2013 WL 5417211, at *4 (E.D. Okla. Sept. 26, 2013), *quoting Fox v. Barnhart*, 2007 WL 1063198, at *5-6 (D. Kan. April 2, 2007) (collecting cases).

More importantly, "[t]he Commissioner's argument ignores our ruling in *Clifton* where we held that we can only review ALJ decisions that make specific findings on the facts of the case. If [the claimant] does not meet the capsule definition, then the ALJ must make that determination in the first instance." *Peck*, 214 Fed. App. at 736. Moreover, if the ALJ disagreed with the record regarding the claimant's impairments and whether they were established prior to age 22, then he would have been required to discuss his reasons for such a finding. *See, e. g.*, *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it

is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others. We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination.").

The SSA has not adopted a standard to measure what constitutes "'deficits of adaptive functioning' under the capsule definition of Listing 12.05(C). Instead, the SSA allows use of the measurement methods authorized by four major professional organizations dealing with mental retardation. . . . The ALJ's decision, however, is silent with respect to what method he used to measure Plaintiff's deficits of adaptive functioning." *Johnson v. Colvin*, 2016 WL 7176655, at *6 (W. D. Okla. Dec. 8, 2016), *citing Barnes v. Barnhart*, 116 Fed. Appx. 934, 942 (10th Cir. 2004). The undersigned Magistrate Judge thus finds that the ALJ ignored evidence to support the likelihood the claimant had deficits in adaptive functioning prior to age 22. *See Johnson v. Colvin*, 2016 WL 7176655, at *7 ("Significantly, the ALJ failed to explain why Plaintiff's completion of the tenth grade, in light of the additional evidence that she was recommended for special education classes and could not complete her GED, supports a finding that she did not have the requisite deficits in adaptive functioning to support the Listing 12.05(C) criteria.").

Turning to the two prongs of section 12.05C, "'the purpose of § 12.05C is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects his work.'" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), *quoting Sird v. Chater*, 105 F.3d 401, 403 n.6 (8th Cir. 1997). With respect to the requirements specifically comprising Listing 12.05C, the claimant appears to satisfy the first prong

since all but one of his IQ scores fell below 70, *e. g.*, he obtained a Verbal Comprehension score of 63, a Perceptual Reasoning score of 75, a Working Memory score of 66, and a Processing Speed score of 62, with a Full Scale IQ score of 65. *See id.* § 12.00D(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, *e. g.*, where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."). Although it is true that a proper rejection of an IQ score as invalid is a sufficient basis for an ALJ to find that a claimant does not meet Listing 12.05C, *see Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007), there is no such finding in this case.

The second prong of Listing 12.05C requires the claimant to have a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C. The Tenth Circuit has adopted the view of the First and Eleventh Circuits that a "§ 12.05C limitation is significant if the claimant suffers from a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function." *Hinkle*, 132 F.3d at 1352. ("We conclude the analysis employed by the First and Eleventh Circuits is the better interpretation of what must be shown to satisfy the second prong of § 12.05C."), *citing Edwards v. Heckler*, 736 F.2d 625, 629-631 (11th Cir. 1984) and *Nieves v. Secretary of Health & Human Services*, 775 F.2d 12, 14 & n.7 (1st Cir. 1985). "[W]hether a claimant has a § 12.05C 'significant limitation' should 'closely parallel' the step two standard, and is to be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step

two." *Hinkle*, 132 F.3d at 1352-1353, *citing Fanning v. Bowen*, 827 F.2d 631, 634 (9th Cir. 1987) (if claimant meets the § 12.05C listing and the durational requirement, "he must be found disabled without consideration of his age, education, and work experience[.]") [internal citations omitted]. Here, the ALJ determined that, in addition to borderline intelligence, the claimant had the severe impairments of seizure disorder, obesity, depression, and anxiety (Tr. 13). This was sufficient to satisfy the second prong. *See Peck*, 214 Fed. Appx. at 734 ("Based on the ALJ's findings [that the claimant had severe impairments that combined to significantly limit her ability to perform basic work-related functions *and* was unable to perform her past relevant work], Peck meets the additional significant impairment requirement under Listing 12.05C."), *citing Hinkle*, 132 F.3d at 1352-1353 & n.4. Thus, contrary to the ALJ's conclusion regarding Listing 12.05C, the claimant *did* provide evidence that his impairment existed before the age of 22, and *both* that he had an IQ score in the range of 60-70 *and* a "physical or other mental impairment imposing an additional and significant work-related limitation," either by his seizure disorder, obesity, depression, or anxiety. As stated above, a *proper* rejection of an IQ score as invalid is a sufficient basis for an ALJ to find that a claimant does not meet Listing 12.05C. However, here there is no such proper rejection and the ALJ does seem to rely on Dr. Feir's findings to some extent.

But even proceeding to step four, the Court agrees with the claimant's second contention that the ALJ failed to properly assess Dr. Magnus's treating physician opinion. Medical opinions from a treating physician such as Dr. Magnus are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory

diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300.

The Court finds that most of the ALJ's reasoning for rejecting Dr. Magnus's opinion is not legally sound. First, the ALJ's opinion failed to take into account that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005). *See also Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("[A] psychological opinion does not need to be based on 'tests;' those findings can be based on 'observed signs and symptoms.' Dr. Houston's observations of Ms. Wise do constitute specific medical findings."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004), *citing* 20 C.F.R. Subpt. P, app. 1 § 12.00(B). Second, even Dr. Horton expressed concerns about the claimant's ability to work, and yet the ALJ erroneously stated that there was a lack of supporting medical evidence showing a complete inability to work. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. Accordingly, the ALJ provided no analysis in relation to the proper factors, misstated the evidence, and thus failed to properly evaluate Dr. Magnus's opinion.

Because the ALJ's findings at steps three and four are not supported by substantial evidence, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further analysis as outlined above.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**